The next case today is United States v. Juan Pena, appeal number 19-1522. Attorney Sultan, please introduce yourself for the record and proceed with your argument. Good morning, your honors. James Sultan for Juan Pena. Your honors, may I reserve two minutes for rebuttal please? Yes, you may. Thank you, and may it please the court. As the court is aware, the government's case against the defendants in this cocaine-based conspiracy case rested on two recordings of their interaction with a paid cooperator who didn't testify at trial. Pena's defense at trial was that there was no such conspiracy and that he had been framed by the cooperator. He makes two arguments on appeal. First, other than his own statements, the conversations on those two recordings should have been excluded because they contained hearsay and double hearsay and were not admitted for a limited purpose. And secondly, part of this argument is the same as the argument made by Mr. Ortiz, that the limitations placed on defense counsel's cross-examination of Agent Mercer about the paid cooperator, coupled with the trial judges telling the jury that the use of a cooperator like this one was appropriate, undermined Pena's defense and deprived him of a fair trial. Let me turn first to the issue about the tapes. There are two tapes. The January 5th tape refers to statements of Ortiz. It was Pena's position in two filings before trial, and he also objected when the tape was offered, that there was insufficient proof that Ortiz was part of the conspiracy to satisfy the requirements of the co-conspirator hearsay exception. Of course, the tapes themselves cannot prove his participation in that conspiracy. Extrinsic evidence is required, and there was no such extrinsic evidence regarding Ortiz. Mere presence and association is not enough. So that's Ortiz. And then there are the statements attributed to this so-called black person, and those statements are double hearsay. There was never a finding, including there was never a Petruzziello finding, that this person, a supposed person named Black, was a co-conspirator. The government argued it in closing, but there was no finding by the court that would support the admission of his supposed statements under the co-conspirator hearsay exception. And then with respect to the second tape, the one on January 6th, there are the statements attributed to an unidentified person that somebody else present in the hotel room has drugs for sale. And the government used that to argue that Kenya and the paid cooperator went into the bathroom because they didn't want to do a deal in front of this other drug dealer. Well, again, there was never any evidence that this supposed other drug dealer was a co-conspirator, and therefore the statements attributed to him were not admissible under the co-conspiracy exception, and they were not admitted for a limited purpose. The government wants to talk in its brief about, well, they were admitted for context. Well, every conversation has a context, but that's not sufficient. It's not like the case that the government relies on. This court's decision in Cruz-Diaz, where there was a limiting instruction given at trial, and the judge told the jury very clearly, you cannot consider these statements of other people with respect to their truth. Here there was no limiting instruction, and Judge Young made it clear he was admitting both tapes in their entirety under the co-conspirator hearsay exception, and they were therefore admitted for all purposes, and if they contained hearsay, they should have been excluded. Four minutes remaining. Four minutes. So that's essentially the first argument. The second argument relates to the limitations on cross-examination about the paid cooperator, coupled with this instruction that the use of such techniques is appropriate, in Judge Young's words. The government's whole strategy in this trial was to present the case based on the paid cooperator's interaction with the defendants while insulating, and to do it through the agents, and at the same time insulating those agents from meaningful cross-examination about the paid cooperator's credibility, and that strategy was aided by the judge's unsolicited comment to the jury that the use of a cooperator in these circumstances was appropriate and lawful. This undermined the defense. I mean, Mercer, the agent, was effectively vouching for the paid cooperator in the sense that he was trying to convince the jury that the drugs turned over to him by the paid cooperator were implicitly provided by Mr. Pena. That's essentially what the government was putting forth, and the agent, Mercer, vouched for that. He talked about how he carefully searched the informant before a controlled buy. I mean, this was all to counter the defense that somehow the paid cooperator had secreted these drugs on his person or in his vehicle. Mercer admitted that the camera inside the car, the paid cooperator's car, was turned off. He admitted they couldn't tell what was going on in that car. So this was a live defense at trial, but the defense was effectively prevented from attacking the paid cooperator's credibility for showing that he framed Ortiz regarding a transaction just two weeks later, prevented from showing that he threatened to testify that he was never searched before a controlled buys. The defense was not allowed to attack the credibility of this person, who, even though he wasn't present at trial, was a critical witness for the government. And then, to make matters worse, Judge Young gives this unsolicited comment that it's totally appropriate and lawful to use law enforcement techniques like that. Go ahead, please. I'm sorry, Your Honor, does the court have a question for me? Yeah, I don't understand the context in which Judge Young decided to make this comment. Your Honor, it is set forth in the appendix, and it was during cross-examination of Mercer regarding the fact that, basically, they were talking about the defense lawyer, I think this was Ortiz's lawyer, if I'm not mistaken, was talking about the importance of quantity to the agent, and that under the federal sentencing guidelines, quantity relates to sentencing, and that was the subject on the table. And then the judge started by saying, well, quantity does relate to sentencing. And I don't have a problem with him saying that, because that was the subject on the table. But then he went further and said that it is appropriate and lawful for the government to use techniques like the use of an informant. And when it was said, and I mean, the judge's words, as this court has said repeatedly, are given tremendous weight by a jury. And in this context, the court was basically putting what, in my youth, was called the good housekeeping seal of approval, not only on the technique, but on the paid cooperator, the very same paid cooperator who the defense was precluded from attacking the credibility of. So those two things, I think, should be considered together, and together they really just cut the defense off at the knees, because there was no longer any substance to the attack on the informant, which the defense wanted to make. Sorry, I seem to have an echo here. Perhaps IT can fix that. But what did defense counsel do at that point? Was there a request to approach the bench and say, judge, really, you've just put your thumb on the scale. It wasn't appropriate. Need you to remediate this? No, Your Honor, and that's a very fair point. It was not objected to, so it is reviewed under the plain error test. But as this court said in Rivera-Rodriguez, the test for reversal based on a judge's comments, even if preserved, is essentially the same as the plain error test. You have to show that the comment was obviously erroneous and that it caused serious error, and what the court said in Rivera-Rodriguez is that necessarily a comment by a judge, if it's erroneous and causes serious prejudice, affects the integrity of the judicial process. So it doesn't have to be plain error. Thank you, Your Honor. Okay, thank you. Thank you, Mr. Sultan. At this time, please mute your audio and video. And, Attorney Lockhart, please introduce yourself back on the record. Good morning. Donald Lockhart for the government, and may it please the court. Unless the court has a different preference, I'll start with the last point, which was Judge Young's instruction. And Judge Lynch asked a question concerning what was the context for this, and I'd like to develop that context just a little bit more. During cross-examination of Agent Rizzo, the defense began to suggest that the government had orchestrated the control transaction using the CI and had manipulated the deal to exceed a certain drug threshold. The court at this juncture called a sidebar conference out of the presence of the jury, and it said to the two defense attorneys that the use of controlled buys is, quote, a perfectly legitimate way to investigate crime, and the jury will be so instructed. Now, at that juncture, neither defense attorney raised any issue with the judge's proposal to give that instruction. Now, just a little bit more context. The cross-examination proceeds and develops a lot of momentum during the cross of Special Agent Mercer, where the defense theme on this point about orchestration and manipulation becomes much more palpable. At this point, the district court intervenes and explains to the jury the relevance of drug weight, and it says, and this is the quoted language the defense contests, it is appropriate to enforce the laws through undercover informants and controlled buys. That's appropriate. It's a lawful law enforcement technique. Now, at that juncture, there was, yet again, no objection. Now, obviously, review is for plain error, and we submit that, at least on this record, where the defense was actually developing a theme to the effect that there was something nefarious or underhanded about the government's use of a cooperating informant and setting up a controlled transaction, that it was perfectly appropriate for the judge to intervene and explain in general terms, not with reference to the specifics of this case, that that is not unlawful and not inappropriate. Now, we cite a number of cases from different circuits, including one from this circuit. In our Ortiz brief addressing this issue, we cite this court's opinion in the FARA case, F-E-R-A, which approves of a somewhat similar instruction along the lines that it's lawful for the government to use undercover agents and to set up these transactions that way, in a case like this one, where the defense had suggested in their cross-examination that somehow that that was inappropriate. That wasn't the precise defense theory here. Let's discuss this a bit more. The defense theory here was not the use of confidential informants was itself anything wrong, but that they chose not to present the confidential informant here. And then the government chooses instead to sort of characterize it through Agent Mercer. And then the government opposes any evidence coming in that this C.I. on a different, unrelated occasion actually lied to the government. And furthermore, that when the confidential informant was not being given transportation he wanted, he then turns around and says, all right, I'll retaliate against you. I'm going to change my testimony. You know, it may be that all of this is harmless error, but it's a little difficult for me to see why that testimony about the confidential witness non-testifying, who is a liar, should not have been presented to the jury. Okay, Judge. We're on a different issue now. We were on Judge Young's instructions. Yes, I know, but those instructions implicitly back up the government in this case. And as you say, context is important. He did not say that this goes to the issue of weight. He made a much more general statement. Okay, a couple things. There were several questions embedded in what you just said. One of which was, was it the case that the defense here was simply that they were framed by the C.I.? And I would submit, no, that's not the case. They were also trying to float this separate theory about orchestration and manipulation. And it's very clear in the cross-examination of the two agents, Rizzo and Mercer. But let me turn substantively to your deeper problem concerning the preclusion of the defense from getting in the C.I.'s statements. Here I'd like to start with a threshold point, which is that Mr. Pena is in a different procedural box than Mr. Ortiz when it comes to this issue. Because Mr. Pena did not join at all in any cross-examination attempt on Mercer or Rizzo to get out this information concerning the C.I.'s statements. Not only that, but he never objected to the limitations on that cross-examination. He did, in fairness to Mr. Pena, raise some of these issues in a pre-trial filing. However, the district court judge never ruled definitively on that filing. So it was incumbent on Mr. Pena at trial to object or participate in that cross-examination. So as to Mr. Pena, there has been forfeiture and reviews for plain error. Second, and more substantively, it's not enough for defense attorneys to say this evidence is important to our defense. They have to find an evidentiary basis to get that evidence in. And now on appeal, we see only two possible avenues raised by the defense. One is Rule 806. The other is Rule 608B. As we point out in the brief, neither rule would have allowed in the C.I.'s statements here. As we pointed out in the last argument, the fact of the matter is, even if you posit that those statements were admitted, the C.I.'s statement misidentifying Ortiz as part of the later transaction in Revere, and the C.I.'s statement a year and a half later after he'd been fired as a C.I. and was disgruntled, in effect, I would testify that I was not searched prior to the transaction. Even if you posit that those pieces of information came before the jury, they would not have created any meaningful foundation for a claim of framing, particularly in a situation where, as we pointed out earlier, it is just far-fetched to think that somehow, under all these controlled circumstances, the C.I. independently acquired $4,000 worth of crack cocaine from a different source and did this carefully choreographed deal whereby this independently acquired crack was somehow inserted into the transaction and then provided to the agents. The point is that no amount of collateral material from the C.I. could have made that defense believable. Mr. Lockhart, I don't know if I agree with that, but let me ask a more fundamental question, hearkening back to your point a minute ago about there had to be evidentiary avenues to present this evidence. One thing I'm not understanding, clearly, is the government conceding that R.E. was a witness in this case? No, we're not conceding that at all. In fact, we argue quite the contrary. It seems to me that 608 is the impeachment of a witness. The extrinsic evidence about the instances of conduct weren't going to come in under 608B because R.E. is not a witness. 806 is the statements of a hearsay declarant. R.E.'s statements, to the extent they appeared on a tape, they weren't hearsay, as far as I could tell. They weren't offered for their truth. They were evidence of a conspiracy in the sense that they occurred. But not about the actual truth of their statements. I'm not sure how this evidence comes in in an evidentiary way if he's not a hearsay declarant and not a witness. We fully agree, Judge, and we briefed those points vigorously. I was planning to develop them. I wasn't sure the court would want to hear from me on those issues because, from our perspective, it just seems so plain that neither rule applies. Since we're talking about it, I will talk about 806. There are actually two problems with that rule. One is the one that you've just identified, which is that none of the CI's statements was admitted for the truth of the matter asserted. Secondly, even if you put aside that problem with the 806 avenue, there's a further problem because nothing in the CI's statements on January 5th in the parking lot or on January 6th in the hotel room were contradicted by any of the later statements that the CI made. So, for two independent reasons... Time has expired. That impeachment wasn't going to be about contradiction, Mr. Lockhart. That impeachment was going to be about the credibility of RE. It wasn't about whether the statements contradicted anything. It was about a much larger issue, whether the government was using a CI who is deceptive and an operator and attempting to frame the defense in this case. The statements certainly would have informed that issue, wouldn't they? Well, it depends. You have to look carefully at the statements. Now, let's start then with the January 23rd deal in Revere where the CI allegedly misidentifies Ortiz as part of that transaction. It's important to note that to the extent that the defense got that evidence in, as we pointed out in the district court at pages 73 of the appendix and 78 through 84 of the appendix, we would have been entitled to reply with evidence showing that Mr. Ortiz was in fact, although perhaps not physically present in connection with that deal, connected to it by cell phone evidence. There was a potential for a mini-trial on that subject, and this leads actually to our fallback argument here, which is that put aside Rule 806, put aside Rule 608B, you still have Rule 403 in the collateral matter rule, which the district court judge seemed to be invoking here when it appeared that there would be a threat of just such a mini-trial at trial when the judge said, we're trying this case, not other cases. We're on another day, another deal. Now we're on another date, and I've told you what you can do with respect to that date. At least in three separate places in the record, the district court makes clear that it is fearful that if the CI information with respect to the January 23rd Revere deal comes in, it's going to open the door to counter-evidence, including not just the cell phone evidence that I mentioned that ties Ortiz to that deal, but in addition, evidence that was seized from the house of Mr. Ortiz, including a loaded handgun, a digital scale, and other items showing very clearly that he is a drug dealer, and it would have undermined his suggestion that he was just an innocent bystander who was set up by this CI and framed with drugs that the CI miraculously acquired at the rate of $4,000 from some independent source. Mr. Lockhart, this case has a lot of moving parts. I understood Judge Young's ruling actually to be a 403 ruling and not to reach these other issues. Usually, review of that, if preserved, is abuse of discretion. You say it wasn't even really preserved here. To my mind, it's a putting-aside standard of review. It's a little bit of a closer question. I actually don't know if defendants would have been better off not engaging in a framing by the government's theory and merely that this guy was a liar and nothing could have been said about it. Is there any indication in the record that Judge Young reached any of these other evidence objections other than the 403? No. I think the fair point is that the defense attorneys, although they cited 806 and 608B in their pretrial filings, did not refer to those rules at trial. As we point out, actually, Mr. Pena's attorney didn't raise these issues at all and didn't even participate in the cross-examination or lodge any objections to the limitations on the cross. At trial, Ortiz's defense attorney did pursue that line of attack and did complain about the limitations but did not cite either rule. That does weaken the idea that Judge Young had those rules in mind when he made his ruling, to Your Honor's point. Nonetheless, the defendants raised those two rules on appeal as being the proper vehicle through which this evidence could have been admitted. But we would only reach those if we thought there was plain error or abuse of discretion as to the 403 issue? That's correct. You could easily resolve this case on the rule 403 ground and avoid any substantive discussion of 806 or 608B. Okay, I've interrupted you. Do you have a final argument to present? Well, no. I'm happy to address Pena's 801D2E issue, which I haven't really discussed here. If the court would like, I would just point out as a housekeeping matter that this is an issue raised by Mr. Pena alone and not by Mr. Ortiz. It's important to keep straight in this case that these two defendants are actually making some different claims that are not being adopted by the other. But just beyond that, just to point out that we did submit a Rule 28J letter which goes to the 801D2E issue. The important point here, and then I'll close, is that Mr. Pena's statements in which he promiscuously refers to Black and his co-defendant, Ortiz, as guys who are in this deal and Black is their supplier are not just admissions of a party opponent as to Mr. Pena, but they are extrinsic evidence of the conspiracy and Black's role in that conspiracy and quite potent evidence in that regard. The final point is that we know that Black is real. We know that he is the supplier because the very next day, the two bags of crack are faithfully delivered to the CI and just as the defendants said Black would be able to do. The government has no further points unless the court would like to ask questions. No, thank you. We'll rest on our brief then. Thank you. Attorney Lockhart, at this time you may mute your camera and your audio and Attorney Sultan, you have a two minute rebuttal if you could unmute. Please reintroduce yourself on the record and proceed. Thank you, James Sultan for Juan Pena. The court obviously understands the defense in this case, that the credibility of the paid cooperator was at the heart of the case, the heart of the defense. This is a paid cooperator who the government had paid him more than $60,000. He had done many, many cases for the government. And in this case, the government was able to protect him by not presenting him on the stand. And the defense was precluded from challenging him. Judge LaPlante said, was he a witness? Well, I submit, yes, he was a witness. He was a witness in the sense that his words came in without any limitation. And he was a witness in the sense that Agent Mercer was essentially describing what he did and was vouching for what he did. Let me ask you about that then, because I need to understand that. Is there any authority for the proposition? Because it needs to be hearsay under Rule 806 and it needs to be a witness statement under Rule 608. So is there any authority for the proposition that someone who doesn't testify in a trial can be a witness for the purposes of the analysis under these rules that you're relying on? Well, Your Honor, I cited a Seventh Circuit, I couldn't find a First Circuit case directly on point. I cited a Seventh Circuit case called Burton, where the government made the same argument that it was a non-testifying person. And the government said, well, it only came in as context. And the court said, well, there was no limiting instruction and therefore it came in for all purposes. So if it comes in for all purposes, I think it's fairly can be analyzed under 806. I think it would be hyper technical to say, well, he didn't take the stand, so therefore he's not a witness. So therefore he can't be he can't his credibility can't be attacked. I mean, and aside from the rule, this is a matter of due process. I mean, his credibility, which is at the heart of the case, cannot be insulated from attack simply by this government's clever strategy. We're going to we're going to hide this guy in the weeds and we're going to just present the case kind of. Well, I guess I have one more question about that then, because I do think these two rules of evidence provide a significant barrier to getting this in. But I was curious about why the defense didn't seek under a due process argument to immunize Ari to put him on the stand and make him an issue in the case. The government would have objected, I think, but there's a there's an argument for that. You understand that process I'm referring to? Well, I've heard of such a hypothetical process, your honor. I'm not aware of any case in this in this district where a judge has. And maybe there is one has immunized a defense witness. I mean, the statute talks about the government can immunize witnesses. They get to play that game. We don't. So he took the there was a hearing. He took the fifth. Judge Young said, well, that's it. You know, but this is after the defense had subpoenaed him. The defense had sought to call him. So I don't think it's fair to fault the defense. I think we're not trying to get before. I'm not suggesting it's a fault. I'm just saying that you say you don't get to play that game. I think there's authority for the proposition that you can't you can't have a due process rate as the defense to immunize a witness. But I concur with your point that it's not a common thing. And it did be quite a showing that would need to be made. I look forward to the opportunity to do that, Your Honor. And the bottom line, if I may just say a conclusion is that, I mean, a defendant is supposed to get a fair trial. It's supposed to be two sides, the prosecution and a defense here. Basically, the defense was eviscerated and therefore he should be entitled to a new trial. I thank the court. Thank you, counsel. That concludes argument in this case. Attorney Salton, Attorney Lockhart and Attorney Wood can disconnect from the hearing at this time.